**TIME WARNER CABLE OF NEW YORK CITY, a division of Time Warner Entertainment Company, L.P., Plaintiff,**

v.

**FREEDOM ELECTRONICS, INC., Todd J. Littlejohn, Paul Kalomeris, John Does 1–10, Jane Does 1–10, Unidentified Corporations 1–10 and Unidentified Business Entities 1–10, Defendants.**

No. 95–6695–CIV–DAVIS.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

Aug. 11, 1995.

Daniel J. Lefkowitz, Gericho, NY, for Plaintiff.

Cary & Cary, Fort Lauderdale, FL, for Defendants.

## *ORDER GRANTING PRELIMINARY INJUNCTION*

K. MICHAEL MOORE, District Judge.

The parties, Time Warner Cable of New York City, a division of Time Warner Entertainment Company, L.P. (hereinafter referred to as "Time Warner Cable" or "plaintiff") and Freedom Electronics, Inc. ("Freedom Electronics, Inc."), et al. (collectively, the "defendants"), having appeared at a hearing before the undersigned on July 28, 1995 (the "Hearing"), and the Court having heard testimony and having received evidence on the issues before it, does hereby issue the following Findings of Fact and Conclusions of Law:

## *FINDINGS OF FACT*

1. Time Warner Cable operates its cable television systems pursuant to franchises awarded to it by the City of New York which authorize it to construct, operate and maintain cable television systems in areas of New York City, New York. Time Warner Cable offers cable television programming services to subscribers who request and pay for the same.

2. Time Warner Cable provides its cable television programming services to authorized subscribers via Subscription Agreements with its subscribers in which it agrees to provide its programming services requested by a subscriber in return for the subscriber's agreement to pay for the same on a monthly basis. Time Warner Cable's subscription agreements forbid tampering with its equipment and cable system, and also forbid the viewing and reception of cable services which are not authorized for that subscriber to view or receive.

3. Time Warner Cable's programming services are offered to its subscribers in "packages" of programming services. Basic and Standard tiers are packages of programming services which a subscriber receives at a monthly rate. Subscribers may also elect to purchase certain premium programming services, such as Cinemax, Home Box Office and Showtime channels, which may be purchased for an additional monthly charge per service.

4. Additionally, Time Warner Cable offers Pay Per View programming, a service enabling subscribers to purchase individual movies, sporting events, or other entertainment for a per event fee over and above the subscriber's regular monthly fee.

5. Each subscriber is entitled to receive only that level of programming services which he or she selects and purchases.

6. The signals for all of Time Warner Cable's cable television services are transmitted from Time Warner Cable reception facilities to subscribers' homes and businesses through a network of cable wiring and equipment (the "System"). In order for a subscriber to receive these transmitted cable television programming services on his or her television set, Time Warner Cable provides each subscriber with a device known as a "converter," which converts the multiple signals simultaneously transmitted over the System into different "channels" which can be viewed on a subscriber's television set.

7. To prevent subscribers from receiving programming services for which they have not paid, Time Warner Cable encodes or "scrambles" the signals for specific programming services. Subscribers purchasing scrambled programming services are provided with a device known as a "decoder," which is incorporated into a converter. The decoder decodes the scrambled services so that the programming selected and purchased can be viewed clearly on a subscriber's television set. Programming services not purchased will continue to be scrambled and therefore will be unviewable on the subscriber's television set.

8. Plaintiff's system is "addressable," which means that subscribers' decoders are programmed by a central computer to authorize viewing of purchased programming services. Each subscriber who purchases services which are scrambled has his or her decoder programmed by the Time Warner Cable central computer to receive only those programming services selected and purchased. The fee for the converter-decoder provided by plaintiff to its subscribers is included on the subscriber's monthly bill and is calculated and, pursuant to regulations of the Federal Communications Commission ("F.C.C."), charged on the basis of plaintiff's "actual cost" in acquiring, installing and maintaining the equipment.

9. Encoding (scrambling) is the primary security method employed by plaintiff and other cable television operators to prevent subscribers from receiving programming services for which they have not paid.

10. It is possible for a dishonest individual to install an unauthorized or "pirate" descrambler/converter (one illegally programmed to descramble all programming services) onto the plaintiff's cable television system in order to receive all of Time Warner Cable's scrambled programming services without authorization and/or making payment therefor. As alleged in the Complaint at § 18, Pay Per View services typically range in cost from $4.00 to $39.99 per event and are offered throughout the day on a per event basis, while premium services range in cost from $7.00 to $13.00 per month per service. Hence, a "pirate" converter/decoder could conceivably steal hundreds of dollars worth of Time Warner Cable's programming services each month.

11. There is a nationwide, "black market" industry of various manufacturers, vendors and distributors of "pirate" converter-decoders or descramblers, who market devices and equipment to subscribers of plaintiff's cable television programming services seeking to avoid the payment of subscription fees to view premium and Pay Per View cable programming services.

12. The Federal Communication Commission ("F.C.C.") has promulgated regulations in 47 C.F.R. Parts 2 and 15 which encompass the field of manufacture, distribution and use of converter-decoders on cable systems in the United States. Those regulations require that any "person" manufacturing, distributing or marketing converter-decoders for a cable system in the United States have prior F.C.C. authorization and approval. Defendants Freedom Electronics, Inc., et al., its principals and employees, have not applied for or received F.C.C. authorization to sell or manufacture any converter-decoders. Furthermore, the F.C.C., citing the need to insure prevention of theft of service, has explicitly stated that it would not require that cable operators allow converters with decoding capabilities to be sold directly to cable subscribers. Report and Order, F.C.C. Docket No. 94–80, p. 6 (1994).

13. Defendants Freedom Electronics, a Florida corporation having places of business located at 4360 N.E. 11th Avenue, Fort Lauderdale, Florida and 1055 N.E. 43rd Street, Fort Lauderdale, Florida, and Todd J. Littlejohn ("Littlejohn") and Paul Kalomeris ("Kalomeris")[1], have been engaged in an ongoing scheme to illegally sell and/or modify cable television decoders for profit. Moreover, each of the defendants at all times knew or should have known that the sale of such electronic equipment was prohibited. The defendants have sold or have assisted in the sale of the illegal equipment to subdistributors and end users with specific intent and knowledge that the devices were to be used to decode and provide the use of defendants' equipment with reception of all scrambled programming services, including premium and Pay Per View services, without the authorization of Time Warner Cable. The defendants advertised that their products are "bullet proof," meaning that they are capable of defeating or circumventing plaintiff's software-driven electronic security measures, the sole purpose of which is to disable "pirate" decoders.

14. The defendants have engaged in the promoting, advertising, furnishing, marketing, selling, delivery, leasing, repairing, shipping, and renting of said illegal electronic equipment to end users, and have done so with intent to defraud Time Warner Cable and with the knowledge that such actions would enable the purchaser of said equipment to obtain Time Warner Cable's programming services without payment therefor.

15. Defendants manufactured and sold their converter-decoders to the plaintiff's ca-

1. It should be noted that Kalomeris failed to appear at the hearing on July 28, 1995. This Court received a letter from him on August 7, 1995, dated July 30, 1995, in which he concedes that he was served with a copy of the complaint on July 25, 1995. In that letter, Kalomeris denies ever having been a "co-owner" of Freedom Electronics. He also contends that he was not an authorized signer of Freedom Electronic's checking account at First Union Bank of Florida, as is represented in the affidavit of Thomas Allen, plaintiff's investigator.

On August 11, 1995, plaintiff's attorney, Patrick J. Sullivan, Esq. ("Sullivan") filed an affirmation in response to Kalomeris' letter. Attached to his affirmation Sullivan has provided this Court with a copy of an authorized signature card establishing Littlejohn and Kalomeris as the authorized signers for Freedom Electronics' account at Southeast Bank. In addition, the plaintiff has submitted a copy of Freedom Electronics'

"Merchant Application for the Acceptance of Credit Cards." In two places on this form, Kalomeris has signed as a "co-owner" of Freedom Electronics. Also, attached as Exhibit D of the affirmation, is an account-opening document of Southeast Bank, regarding an account held in the name of Freedom Electronics. Kalomeris is again listed as a "co-owner" with Littlejohn. Finally, Southeast Bank provided plaintiff with a copy of both Kalomeris' and Littlejohn's drivers licenses. The address listed on Kalomeris' license is identical to that set forth in his July 30, 1995 letter.

From the evidence submitted, this Court is satisfied that Kalomeris has been properly named as a defendant in this action. His letter dated July 30, 1995 reveals that he was served with the complaint on July 25, 1995; thus, he was aware of the hearing and chose not to attend.

ble television subscribers. At the hearing, the summary testimony of plaintiff's Director of Signal Security, Keith Lorenzen, as well as documentary evidence introduced during his testimony, established that defendants sold and distributed numerous "pirate" converter-decoder devices to subscribers residing within geographic franchise areas and locations where Time Warner Cable operates its cable systems. *See* Plaintiff's Exhibits 7 through 17. Time Warner Cable has proprietary rights in the cable programming services offered over its cable systems which defendants' pirate decoder devices enable third party users to steal. Plaintiff is a "person aggrieved" by defendants' violations of the Communications Act.

16. On February 17, 1995, Defendants sold a two-piece converter-decoder to an employee of plaintiff's private investigator, ACI Investigations, Inc. ("ACI Investigations"), for approximately $290.00, plus shipping and handling, which device defendants knew and represented would enable this individual to receive the "premium" and Pay Per View programming services of the plaintiff without its authorization.

17. The converter-decoder device which defendant sold to ACI Investigations was received on February 22, 1995. It was subsequently tested on Time Warner Cable's system and found to descramble all of plaintiff's "premium" and Pay Per View programming services.

18. Defendants subsequently sold a base-band type descrambler to plaintiff's private investigator on February 23, 1995 for $295.00, plus shipping and handling, which device defendants knew and represented would enable the purchaser to receive the "premium" and Pay Per View programming services of the plaintiff without its authorization.

19. The base-band descrambler device which defendants sold to ACI Investigations was received on March 2, 1995. It was subsequently tested on Time Warner Cable's system and found to descramble all of plaintiff's "premium" and Pay Per View programming channels.

20. Defendants subsequently sold a "Novavision" descrambler to Thomas Allen, president of ACI Investigations, which was received in July of 1995. The defendants knew and represented that this device would enable Allen to receive the "premium" and Pay Per View programming services of the plaintiff without its authorization.

21. The converter-decoder device which defendants sold to Allen was subsequently tested on Time Warner Cable's system and found to descramble all of plaintiff's "premium" and Pay Per View programming services.

22. On July 21, 1995, and pursuant to an order of this Court dated July 20, 1995, the United States Marshal for the Southern District of Florida executed a seizure for the business premises of defendant Freedom Electronics located at 1055 N.E. 43rd Street, Fort Lauderdale, Florida. At this location, hundreds of converter-decoders, descramblers and business documents, including sales invoices and computer records yet to be accessed, were seized.

23. Such violations of the Communications Act have caused and will continue to cause Time Warner Cable irreparable harm due to the theft of its programming services. Time Warner Cable cannot practicably determine the number of lost subscribers and lost revenues resulting from the defendants' unlawful conduct. In addition to diminishing Time Warner Cable's revenues, the defendants' unlawful conduct injures Time Warner Cable's reputation and good will, its ability to attract and finance the future acquisition of quality services, and further impairs its ability to enhance its future growth and profitability. Moreover, New York City loses franchise fees as a direct result of defendants' misconduct. Plaintiff has no adequate remedy at law to redress such violations.

24. Theft of cable service also impacts negatively on New York City and other municipalities which derive franchise fees from a cable operator's gross revenues. The lost cash flow to cable operators has an adverse impact on the ability of a cable operator to purchase and maintain a high quality of programming services for its subscribers. Cable piracy also creates an unfair subsidy to

"freeloaders," paid for by honest subscribers. Furthermore, the maintenance of unauthorized connections and use of unauthorized descramblers may result in signal "leakage" which violates F.C.C. regulations, and for which Time Warner Cable may suffer the imposition of F.C.C. fines and other sanctions.

## CONCLUSIONS OF LAW

25. This action arises under 47 U.S.C. §§ 605 and 553. The Court has jurisdiction over this action under 28 U.S.C. § 1331 and has pendent jurisdiction over the state law claims. Venue is properly established in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b).

26. Time Warner Cable is a "person aggrieved" by defendants' conduct in violation of the Communications Act and is thereby authorized to institute this action against defendants under 47 U.S.C. §§ 605(e)(3)(A) and 553(c)(1).

■ 27. The manufacture and/or sale of converter-decoders with specific knowledge or intent that the device will be used for unauthorized interception and reception of cable television programming is a violation of 47 U.S.C. § 553(a)(1). *Storer Communications, Inc. v. Mogel*, 625 F.Supp. 1194 (S.D.Fla.1985); *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998 (2d Cir.1993).

■ 28. The manufacture, assembly, modification, import, export, sale or distribution of converter-decoders, knowing or having reason to know that such devices will be primarily used in the unauthorized interception and reception of cable television programming is a violation of 47 U.S.C. § 605(e)(4). *Cable/Home Communication Corp. v. Network Prod., Inc.*, 902 F.2d 829 (11th Cir.1990); *ON/TV of Chicago v. Julien*, 763 F.2d 839 (7th Cir.1985); *Nat'l Subscription Television v. S & H TV*, 644 F.2d 820 (9th Cir.1981); *Cablevision Sys. Corp. v. Mu-*

*neyyirci*, 876 F.Supp. 415 (E.D.N.Y.1994). Each individual device sold, manufactured, assembled, or distributed in violation of 47 U.S.C. sections 605(a) and (e)(4) is a separate violation. 47 U.S.C. § 605(e)(4).

■ 29. Defendants violated §§ 605 and 553 of the Communications Act by manufacturing, modifying, selling and distributing converter-decoders to plaintiff's cable television subscribers, knowing, having reason to know and intending that their devices would be used to intercept and receive cable television services and programming without plaintiff's authorization. The fact that disclaimers were enclosed with the shipments of descramblers which advised customers to contact their local cable television provider and advise it of their purchase and use of the device does not serve to exculpate them from otherwise illegal conduct. *Julien*, 763 F.2d at 844; *Subscription Television of Greater Washington v. Kaufmann*, 606 F.Supp. 1540, 1542–3 (D.D.C.1985).[2]

30. Defendants' violations of § 605 and § 553 of the Communications Act were committed willfully and for purposes of defendants' direct or indirect private financial gain or commercial advantage.

31. For each violation of 47 U.S.C. § 553(a)(1), a court may award an aggrieved party statutory damages in a sum of "not less than $250.00 or more than $10,000.00 as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii). In lieu of statutory damages, an aggrieved party may elect to recover its actual damages, plus costs attributable to the violation of the statute. 47 U.S.C. § 553(c)(3)(A)(i). Each converter-decoder manufactured or distributed in violation of § 553 is a separate violation of the statute. 47 U.S.C. § 553(b)(3).

32. In any case where the violator of 47 U.S.C. § 553 violated the statute "willfully" and for "purposes of commercial advantage or private financial gain, the court in its

---

2. The court noted:
There is only one purpose to be achieved by modifying a decoder device so as to eliminate its addressability function: to enable a user to receive and unscramble an STV signal without notifying the signal provider. Thus, the defendant is selling a decoder that is no longer compatible with plaintiffs' computer and may not be terminated by its computer. The defendant's "instruction" accompanying the decoder [advising the purchaser] to communicate with the signal provider is therefore worthless. *Id.* at 1543.

**1460**

discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.00." 47 U.S.C. § 553(c)(3)(B).

33. For each violation of 47 U.S.C. § 605(e)(4), which includes the manufacture and sale of devices and equipment, "knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming or is intended for any other activity prohibited by subsection (a)", 47 U.S.C. § 605(e)(4), the court may award the aggrieved party statutory damages in a sum of "not less than $10,000.00 or more than $100,000.00 as the court considers just" or, upon the election of the aggrieved party, the aggrieved party's actual damages, plus the defendants' profits attributable to the violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). For purposes of the number of violations of section 605, each individual device sold, manufactured, modified or distributed in violation of the statute is a separate violation of subsection 605(e)(4).

34. Under both sections 553 and 605, a court may enter "permanent injunctive relief on such terms as it deems reasonable to prevent or restrain violations" of these statutes. 47 U.S.C. §§ 553(c)(2)(A) and 605(e)(3)(B)(i).

■ 35. In order to obtain a preliminary injunction, the movant must generally establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) its own injury outweighs the injury to the nonmovant; and (4) the injunction would not disserve the public interest." *Haitian Refugee Ctr. v. Christopher*, 43 F.3d 1431, 1432 (11th Cir.1995). However, when authority for the issuance of "statutory" injunctive relief is provided by legislative enactment, an aggrieved party is entitled to such relief upon a showing that a defendant has violated the statute or is likely to do so without regard to the traditional equitable prerequisites of injunctive relief. *Burlington N.R.R. Co. v. Dep't of Revenue*, 934 F.2d 1064, 1074–75 (9th Cir.1991); *see Storer*, 625 F.Supp. at 1202 (Under section 553, a movant need only prove a violation of

§ 553(a)(1) in order to request an injunction under § 553(c)(2)(A)).

■ 36. Plaintiff is entitled to a preliminary injunction against defendants' further manufacture, modification, sale, distribution or possession of cable television converter-decoder equipment under 47 U.S.C. §§ 553(c)(2)(A) and 605(e)(3)(B)(i).

37. As discussed at length above, plaintiff has demonstrated a likelihood of success on the merits. Moreover, the plaintiff suffers irreparable harm from each converter-decoder device which one of plaintiff's subscribers purchases from defendants. *Julien*, 763 F.2d at 844; *Storer*, 625 F.Supp. at 1202; *Kaufmann*, 606 F.Supp. at 1545–6. It should be noted, however, that several courts have held that absence of justification for violation of clear statutory rights virtually eliminates the necessity of showing irreparable harm. *See Storer*, 625 F.Supp. at 1202.

38. Furthermore, as a result of the continuing harm resulting from each violation and the fact that the precise quantity of damages suffered by it may be difficult or impossible to calculate, Time Warner Cable does not have an adequate remedy at law for defendants' violations. *Kaufmann*, 606 F.Supp. at 1546.

39. A balancing of the parties' respective hardships reveals that the defendants will only be enjoined from conducting a business which is prohibited by state and federal law. *Julien*, 763 F.2d at 844; *Storer*, 625 F.Supp. at 1203.

40. Finally, the entry of an injunction against defendants' continued sale and distribution of unauthorized cable television decoding devices does not harm and, in fact, will promote the public interest. *Julien*, 763 F.2d at 844; *Storer*, 625 F.Supp. at 1203; *Kaufmann*, 606 F.Supp. at 1546.

■ 41. This Court also finds that Time Warner Cable is entitled to an injunction freezing defendants' business assets to preserve its statutory right under 47 U.S.C. §§ 605(e)(3)(C)(i)(I) and 553(c)(3)(A)(i) to an accounting of the proceeds gained from defendants' illegal enterprise. In this action, an accounting is absolutely necessary where, based upon the secretive and illicit nature of

this criminal enterprise, the full volume and extent of defendants' sales to individuals and entities besides plaintiff's investigators is presently unknown and without court intervention will remain unknown. Therefore, it is

ORDERED AND ADJUDGED as follows:

a. Defendants, their agents, employees, affiliates, and those entities and persons controlled directly or indirectly by any of them or acting in their behalf, are hereby preliminarily enjoined from removing, destroying, selling, transferring or modifying in any manner any cable television decoding devices and related equipment, including but not limited to cable television decoders, converters, descramblers, descrambling cubes, converter-decoder combination units, integrated circuits, E proms and circuit boards.

b. Defendants are hereby preliminarily enjoined from destroying, altering, removing or secreting any of the defendants' books and records, including but not limited to invoices, purchase orders, receipts, bank records, safe deposit box records, insurance policies, shipping labels, tax returns, including all records stored on computer discs or within computer terminals or otherwise, which contain or indicate the names or addresses of distributors, suppliers, manufacturers, and/or purchasers of any cable television converters, cable television descramblers, converter/descrambler combination units and any related equipment which contain, indicate or otherwise reflect any transactions of any kind involving these devices and equipment.

c. Defendants are hereby preliminarily enjoined from transferring, removing, encumbering or permitting the withdrawal of any assets or property, presently or formerly belonging to the defendants, jointly or severally, whether real or personal, tangible or intangible, including but not limited to cash, bank accounts of any kind, stock and bond accounts and title to defendants' business property, except transfers made with respect to documented and necessary personal expenses and legitimate business expenses.

d. Defendants shall forthwith provide plaintiff with an accounting, listing the total number of sales and purchases of cable tele-vision decoders, converters, or descramblers made by or on behalf of any of the Defendants to or from any person and/or entity; this accounting shall also include any and all profits, transfers or withdrawals of assets, property or any other funds made by, to and/or between any of the defendants from January 1, 1991 to the present.

DONE AND ORDERED.