United States Court of Appeals,

Eleventh Circuit.

No. 95-4043.

HAITIAN REFUGEE CENTER, INC., Andre Joseph, Lorilus Achat, Plaintiffs-Appellants,

v.

Warren CHRISTOPHER, Secretary of State, William J. Perry, Secretary of Defense, Doris Meissner, Commissioner, Immigration and Naturalization Service, Janet Reno, Attorney General, Immigration and Naturalization Service, Michael Williams, Brigadier General, Commander, Joint Task Force, Defendants-Appellees.

Jan. 18, 1995.

Appeal from the United States District Court for the Southern District of Florida. (No. 95-22-CV-KMM), K, Michael Moore, Judge.

Before KRAVITCH, BIRCH and CARNES, Circuit Judges.

BIRCH, Circuit Judge:

In this case we determine whether Haitian migrants in safe haven outside the physical borders of the United States should have been granted injunctive relief to prevent their repatriation to Haiti. The district court denied their motions for a temporary restraining order or a preliminary injunction, and they appeal. We AFFIRM.

## I. BACKGROUND

The factual background of the Haitian migrants' arrival in safe haven at Guantanamo Bay is documented in our opinion issued today, *Cuban Am. Bar Ass'n v. Christopher,* Nos. 94-5138, 94-5231, & 94-5234, slip op., --- F.3d ---- (11th Cir. Jan. 18, 1995) [hereinafter *CABA* ], and thus, here we address only those facts which give rise to this appeal. On December 29, 1994, the government announced its offer of approximately $80.00 American

dollars to each Haitian migrant who volunteered to return to Haiti by January 5, 1995. The migrants were informed that if they failed to volunteer to return to Haiti, they would not receive any compensation and likely would be involuntarily repatriated beginning on January 5, 1995. The government began the involuntary repatriation process as anticipated.

On January 5, 1995, the plaintiffs-appellants, Haitian Refugee Center ("HRC") and two individual Haitian migrants at Guantanamo Bay, initiated suit in the Southern District of Florida requesting a temporary restraining order to prevent the involuntary repatriation of Haitian migrants scheduled to begin that evening. *Haitian Refugee Ctr., Inc. v. Christopher,* No. 95-0022-CIV-MOORE (S.D.Fla.1995). During the evening of January 5, the district court heard oral arguments regarding HRC's and the individual Haitian migrants' claims that the defendants-appellees ("the government") were violating the Haitian migrants' putative equal protection and due process rights by repatriating them without their consent. After a two hour hearing, the district court orally converted HRC's and the individual Haitian migrants' request for a temporary restraining order into a request for preliminary injunctive relief so that appeal could be taken. The district court then orally denied injunctive relief to HRC and the individual Haitian migrants. On January 9, 1995, HRC and the two individual Haitian migrants moved in this court for summary reversal of the district court's denial of injunctive relief or in the alternative, an expedited briefing schedule for appeal on the merits. We held their request pending release of our opinion in

*CABA.*

## II. DISCUSSION

A. *Jurisdiction*

The district court with consent of the parties, converted HRC's request for a temporary restraining order into a request for preliminary injunctive relief so that, in light of the similarity of issues presented in this case and those pending before us in *CABA,* the losing party could appeal directly to this court. We have jurisdiction of appeals from interlocutory orders of the district court denying injunctive relief. 28 U.S.C. § 1292(a)(1).

B. *Standard of Review*

Because of the extraordinary and " "drastic' " nature of preliminary injunctive relief, "we will disturb the denial of a preliminary injunction only if the district court abused its discretion." *Crochet v. Housing Auth. of Tampa,* 37 F.3d 607, 610 (11th Cir.1994) (per curiam) (quoting *Cafe 207, Inc. v. St. Johns County,* 989 F.2d 1136, 1137 (11th Cir.1993) (per curiam)). Only where the district court misapplies the law will we refuse to defer to its conclusions supporting its denial of relief. *See Speer v. Miller,* 15 F.3d 1007, 1009 (11th Cir.1994).

C. *The Merits*

A party requesting preliminary injunctive relief must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) its own injury outweighs the injury to the nonmovant; and (4) the injunction would not disserve the public interest." *Haitian Refugee Ctr., Inc. v. Baker,* 949 F.2d 1109, 1110 (11th Cir.1991) (per curiam).

The requesting party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of its ability to establish any of the other elements. *See Church v. City of Huntsville,* 30 F.3d 1332, 1342 (11th Cir.1994).

HRC and the individual Haitian migrants in this case contend that the United States is violating Haitian migrants' statutory and constitutional rights by involuntarily repatriating them to Haiti. They contend that the government has created a protectable liberty and property interest in remaining in safe haven. Thus, they argue, the migrants should not be removed from safe haven without due process.

The district court concluded that HRC and the individual Haitian plaintiffs were not likely to succeed on the merits of their claim that the government violated migrants' due process and equal protection rights. The court reasoned that "the law with respect to the rights of such individual[ ] [migrants] that has been decided," indicates no cognizable claim. Additionally, it found no support as a matter of law that provision of safe haven created a protectable liberty interest, deprivation of which would require that the government's actions comport with due process. Hr'g Tr. at 72. We agree. *See CABA,* slip. op. at ----, --- F.3d at ----, ("[P]roviding safe haven residency is a gratuitous humanitarian act which does not in any way create a liberty interest.").

HRC's attempt to liken the conduct by the government in repatriating the individual Haitian migrants with conduct

proscribed by the Supreme Court in *Jean v. Nelson,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985), *aff'g,* 727 F.2d 957 (11th Cir.1984), also fails. In *Jean,* the Court was addressing individualized parole decisions by lower-level immigration officials who were constrained by statutory and regulatory provisions which did not allow those decisions to be based on national origin. *Jean* did not address the Executive Branch's plenary authority over the immigration and foreign policy decision to repatriate from safe haven Haitian migrants. Under the binding law of this circuit, there is no statutory provision which prevents the President or the Attorney General from repatriating the Haitian migrants. *See CABA,* slip op. at ----, --- F.3d at ----; *Haitian Refugee Ctr., Inc. v. Baker,* 953 F.2d 1498 (11th Cir.) (per curiam), *cert. denied,* --- U.S. ----, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992). Moreover, HRC and the individual Haitian migrants have not identified, nor have we found, any applicable regulations constraining lower-level immigration officials that would possibly change the result in this case. Hence, the district court correctly interpreted the precedents of this circuit, and thus, did not abuse its discretion in denying HRC's and the two individual Haitian migrants' meritless request for injunctive relief from alleged equal protection and due process violations.

## III. CONCLUSION

HRC and two individual Haitian migrants sought to enjoin the government's repatriation of Haitian migrants from safe haven outside the physical borders of the United States. The district court, correctly interpreting the law of this circuit, denied them

relief.  The court did not abuse its discretion.  Accordingly, we

AFFIRM.