PAUL Y. By and Through his mother and father, KATHY Y., and Fernando Y., and best friends, and the Advocacy Center for Persons with Disabilities, Inc., Plaintiffs,

v.

Harry K. SINGLETARY, Jr., in his official capacity as Secretary of the Department of Corrections, State of Florida, Defendant.

No. 96–3656 CIV.

United States District Court,
S.D. Florida.

Aug. 1, 1997.

Order Denying Rehearing Sept. 30, 1997.

Barbara C. Burch, West Palm Beach, Fl, for Plaintiffs.

Leonard T. Helfand, Tallahassee, FL, for Advocacy Center for Persons with Disabilities, Inc..

Gerald B. Kornblum, Legal Aid Society of Palm Beach County, West Palm Beach, Fl, Steven Groves, Assistant Attorney General, Ft. Lauderdale, FL, for Defendant.

### ORDER RE: PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [1]

BROWN, United States Magistrate Judge.

**This matter** is before this Court on Plaintiffs' Motion for Preliminary Injunction, filed February 19, 1997. This Court has considered the motion, the response, the reply, the Joint Stipulation of Fact, and all pertinent materials in the file. In addition, on July 21,

---

1. The parties in this case have consented to this Court resolving this dispositive motion pursuant to 28 U.S.C. § 636(c).

1997 this Court conducted a hearing and considered argument of counsel.

## BACKGROUND

Plaintiff Paul Y (hereinafter "Paul") is just over 16 years old. The parties agree that he is a person with disabilities within the meaning of the Individuals with Disabilities Education Act ("IDEA"). Paul had been determined eligible for an Individual Education Plan ("IEP") and the Palm Beach County School District developed an IEP for him in August of 1996. The following month, Paul was sentenced to a two year term of incarceration in connection with a criminal case in which he was treated as an adult. He subsequently was transferred by the Florida Department Corrections to the South Florida Reception Center, located in Dade County. Paul did not receive educational services during the period of time he was at that location, from October 2 or October 3, 1996 through November 21, 1996.

On November 18, 1996, Paul's attorney requested a due process hearing with the Division of Administrative Hearings because of this failure to provide educational services. A Final Order was entered denying this request, on the basis of *Fla. Stat.* § 120.81(3)(a).[2] On November 26, 1996, a Transition Plan ("TP") for Paul's education was developed at the Indian River Correctional Institution. Neither Paul's parents nor his attorney was informed by prior written notice and neither his parents nor his attorney were participants in the TP's development. The TP varied substantially from the IEP originally developed in Palm Beach County.

Plaintiffs' Motion for Preliminary Injunction essentially requests this court to find the denial of the administrative hearing to be improper. It basically seeks three forms of relief. (1) that Paul's IEP prepared in Palm Beach County be reinstated immediately pending a due process hearing; (2) that this Court retain jurisdiction to conduct that due process hearing and determine the proper IEP for Paul; and (3) that this Court declare, via preliminary injunction, that the State of Florida may not change transition plans without prior notice to the parents of the affected disabled child.

## DISCUSSION

### I. Standard for Preliminary Injunction

■ In order to grant preliminary injunctive relief, the movant must satisfy four prerequisites: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the movant is greater than any damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, will not disserve the public interest. *See e.g., Carillon Importers, Ltd. v. Frank Pesce Int'l. Group Ltd.,* 112 F.3d 1125 (11th Cir. 1997); *Haitian Refugee Ctr., Inc. v. Christopher,* 43 F.3d 1431 (11th Cir.1995); *Church v. City of Huntsville,* 30 F.3d 1332 (11th Cir. 1994). Because the issuance of a preliminary injunction is an extraordinary remedy, it should not be granted until the movant carries the burden of persuasion as to the aforementioned prerequisites. *See Church supra.* The primary justification for granting such preliminary injunction is to allow the court to render a meaningful decision after a trial on the merits; in other words, to preserve the status quo. *See Canal Authority of State of Florida v. Callaway,* 489 F.2d 567 (5th Cir. 1974).[3] Finally, it should be noted, that "likelihood of success," on the merits is not to be equated with "success" on the merits. *See University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).

### II. Statutory Requirements

Turning first to the central question, that is, the denial of the due process hearing, the Defendant has, in effect, conceded that Paul is now entitled to same. Defendant suggests that the original denial was proper, arguing that *Fla. Stat.* § 120.81(3) prohibited Paul from requested administrative relief from the Department of Administrative Hearings. However, Defendant acknowledges that since that time new legislation has been passed in

---

2. That section, in pertinent part, does not allow "prisoners" to seek administrative determination or any other review of agency activity. *See Fla. Stat.* § 120.81(3)(a).

3. Cases decided by the former Fifth Circuit prior to October 1, 1981 are binding in the 11th Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

Florida which, at least in part, changes the law. Defendant points this Court to *Fla Stat.* § 944.801(4), which was passed subsequent to the denial of Paul's request for a due process hearing. That section states:

Notwithstanding s. 120.81(3), all inmates under 22 years of age who qualify for special educational services and programs pursuant to the Individuals with Disabilities Education Act, [citation omitted] and who request a due process hearing as provided by that act shall be entitled to such hearing before the Division of Administrative Hearings.

*Fla. Stat.* § 944.801(4) (1997). However, Plaintiffs correctly argue that the problem is not eliminated by the enactment of that provision.

■ In 20 U.S.C. § 1415, certain procedures are established for "[a]ny State educational agency, any local educational agency, . . . which receives assistance under this subchapter . . .". *See* 20 U.S.C. § 1415(a).[4] Among other things, this section requires "written prior notice to the parents . . . of the child whenever such agency or unit—(i) proposes to initiate or change or (ii) refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child." 20 U.S.C. § 1415(b)(1)(C).

Under Federal law, Paul qualifies for an "individualized education program" as that term is defined in 20 U.S.C. § 1401(20). In pertinent part, that definition states that an "individualized education program" is a plan for each child with a disability developed by an appropriately qualified person or persons, along with the parents or guardian of the child. *See* 20 U.S.C. § 1401(20). While this procedure was followed with respect to the IEP prepared by Palm Beach County, the uncontroverted evidence before this Court is that the IEP was apparently never implemented, and furthermore was not carried out at the other facilities where plaintiff was housed. In implementing the aforementioned procedures, the Code of Federal Reg-

ulations mandates that parents be allowed to participate, and indeed that the agency take steps to insure that parents be present at meetings, by providing appropriate prior notice, and by scheduling meetings at mutually agreeable upon dates, times, and places. *See* 34 C.F.R. § 300.345(a). The obvious importance of the parents is underscored by the fact that the Code mandates parental attendance where at all possible, including by using telephone calls (34 C.F.R. § 300.345(c)), and going so far as to require documented records of attempts to have the parents in attendance at said meetings (34 C.F.R. § 300.345(d)).

■ It is axiomatic that where Federal law conflicts with State law, Federal law controls. U.S. *Const.* art. VI. Clearly, *Fla. Stat.* § 120.81(3), which was previously followed, conflicted with applicable Federal law. Even with the advent of the newly passed *Fla. Stat.* § 944.801(4), Florida law still does not comply with 20 U.S.C. § 1400 *et seq.*, in that it does not require prior notice to parents, but only allows a subsequent due process hearing after the objectionable activity has taken place.

Defendant argues that recently passed Federal law mandates a different result. Defendant argues that recently adopted amendments to IDEA support the actions taken by the state even prior to the enactment of new state law. *See* Individuals with Disabilities Education Act Amendments of 1997, Pub.L. No. 105–17, 111 Stat. 37 (1997). Defendant argues that § 615(m) of those amendments stands for the proposition that because Paul was convicted as an adult and incarcerated in an adult facility, the rights that would normally be accorded to his parents under IDEA are transferred to him. This Court, however, disagrees with Defendant's construction of said statute.

■ Section 615(m) is entitled "Transfer of Parental Rights at Age of Majority." It allows a state to provide that when a child with a disability "reaches the age of majority under State law . . ." certain events shall or will occur.[5] Pub.L. No. 105–17, 111 Stat. 37,

---

4. Although the parties have not really discussed this matter, Defendant apparently concedes that this section applies to it.

5. There is no evidence in this record that the State of Florida has so provided.

§ 615(m)(1) (1997). Subsection (D) of that section states "all rights accorded to parents under this part transfer to children who are incarcerated in an adult or juvenile Federal, State or local correctional institution." Defendant reads that section to mean that because Paul is incarcerated in an adult institution, he now has the transferred right of majority. This is an *incorrect reading of the* statute. Subsection (D) merely points out that the "rights accorded to parents under this part" would be transferred to children—virtually no matter where they are incarcerated. However, the rights still do not transfer until the child reaches "the age of majority under State law ...". *See* Pub.L. No. 105–17, 111 Stat. 37, § 615(m)(1) (1997). It is undisputed that Paul is not in that category.[6]

### III. Have Plaintiffs Established the Requirements for Injunctive Relief?

▪▪▪ Taking the elements in reverse order, this Court finds that the injunction, if issued, will not disserve the public interest. It further finds that the threatened injury to Paul is greater than any damage to Defendant. This Court also finds that irreparable injury will be and has been suffered, since Paul has been deprived of, and continues to be deprived of, the education he and his parents allegedly desire for him.[7] The findings as to these three elements would apply to all relief sought by Plaintiffs. Turning to the substantial likelihood of success, this Court must consider each of the requested forms of relief separately.

▪▪▪ Plaintiffs initially seek to have the IEP proposed by Palm Beach County reinstated immediately, pending a due process hearing. This Court finds that Plaintiffs have not demonstrated a substantial likelihood of success on the merits with respect to the propriety of the original IEP under the circumstances of Paul's transfer to the South Florida Reception Center and current incarceration at the Indian River Correctional Institute, and therefore denies that form of injunctive relief.[8]

▪▪▪ As to the issue of prior notification, this Court finds there is a substantial likelihood of success in Plaintiffs' position. Accordingly, this Court hereby enjoins Defendant from altering or changing any Individual Education Plans or Transition Plans unless 20 U.S.C. § 1415(b)(1)(C) is complied with.

### IV. Jurisdiction

Finally, this Court finds that Plaintiffs have properly exhausted their administrative remedies. *See Doe v. Alabama State Dept. of Education,* 915 F.2d 651 (11th Cir.1990). Pursuant to 20 U.S.C. § 1415(e)(2), this claim can be brought in this Court. That section further specifically states:

> ... In any action brought under this paragraph the Court shall receive the records of the administrative proceedings [in this case there are none since the state refused to have an administrative hearing], shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the Court determines is appropriate.

20 U.S.C. § 1415(e)(2). Accordingly, this Court will schedule a due process hearing by separate notice.

---

6. To the extent Defendant also relies on § 614(d)(6)(B), which permits the modification of the IEP of a disabled child who has been convicted as an adult, this Court notes that the Defendant has not, at this juncture, "demonstrated a bona fide security or compelling penological interest that cannot otherwise be accommodated." *See* Pub.L. No. 105–17, 111 Stat. 37, § 614(d)(6)(B) (1997).

7. AT the hearing, Defendant argued that Plaintiffs have failed to made an adequate showing that the GED system, which is apparently the system which would be offered to Paul while institutionalized, is a "lesser" educational system than he would otherwise receive outside of the prison setting. However, Plaintiffs indicated at the hearing that Paul has expressed an interest in subject areas which would not be covered by the GED system. This Court finds that if Paul is not receiving the educational opportunity he desires, and such could be accommodated by an IEP, the harm to him during the period of time that such a plan is not in effect is irreparable.

8. Indeed, at the hearing, Plaintiffs' counsel conceded that Plaintiffs' position was not that the IEP developed by Palm Beach County was the only educational plan which would be appropriate under the circumstances.

## ORDER DENYING MOTION FOR REHEARING

**This matter** is before this Court on Defendant's Motion for Rehearing, filed August 8, 1997. This Court has considered the motion and the response. This Court being otherwise fully advised, **FINDS** as follows:

1. Defendant requests a rehearing with respect to this Court's interpretation of the following law and its application to the instant case:

(m) TRANSFER OF PARENTAL RIGHTS AT AGE OF MAJORITY -

(1) IN GENERAL—A State that receives amounts from a grant under this part may provide that, when a child with a disability, reaches the age of majority under State law (except for a child with a disability who has been determined to be incompetent under State law) -

(A) the public agency shall provide any notice required by this section to both the individual and the parents;

(B) all other rights accorded to parents under this part transfer to the child;

(C) the agency shall notify the individual and the parents of the transfer of rights; and

(D) all rights accorded to parents under this part transfer to children who are incarcerated in an adult or juvenile Federal, State, or local correctional institution.

Pub.L. No. 105–17, 111 Stat. 37, § 615(m)(1)(1997).

2. In its prior Order, this Court stated, *inter alia:*

.... Defendant argues that § 615(m) stands for the proposition that because Paul was convicted as an adult and incarcerated in an adult facility, the rights that would normally be accorded to his parents under this law are transferred to him. This Court, however, disagrees with Defendant's construction of said statute.

Section 615(m) is entitled "Transfer of Parental Rights at Age of Majority". It allows a state to provide[1] that when a child with a disability *"reaches the age of majority under State law ..."* (emphasis added) certain events shall or will occur. Subsection (D) of that section states "all rights accorded to parents under this part transfer to children who are incarcerated in an adult or juvenile Federal, State or local correctional institution." Defendant reads that section to mean that because plaintiff herein is incarcerated in an adult institution, he now has the transferred right of majority. This is an incorrect reading of the statute. Subsection (D) merely points out that the "rights accorded to parents under this part" would be transferred to children—virtually no matter where they are incarcerated. However, the rights still do not transfer until they reach "the age of majority under State law ..." *See* § 615(m)(1).

3. Defendant argues that this Court misinterpreted the above section and its application to the situation at bar, arguing that "[i]f parental rights transferred to a child **only** upon the child's reaching the age of majority in **all situations** (regardless of incarceration), the Congress would not have included subsection (D) in the new legislation" and that "... the general rule is that parental rights transfer to the child upon reaching the age of majority, but, if the child has been incarcerated in an adult correctional institution, the parental rights transfer to that child regardless of age." (emphasis in original).

4. This Court finds Defendant's argument to be without merit. First, as the Court noted in its prior order, even if the law could be interpreted in the manner Defendant suggests, there is no indication that the State of Florida has provided for rights to be so transferred. Second, as plaintiff notes, the "structure" of § 615(m) indicates that the initial phrase applies to all of the following lettered paragraphs. Given such a reading, subparagraph (D) is not superfluous, as Defendant argues. Rather, as the Plaintiff aptly explains:

If a State elects to allow for the transfer of parental rights at the age of majority, public agencies must continue to adhere to all notice requirements for both the individual student and the parents of that student. Section 615(m)(1)(A). All rights, other than notice, then transfer to the majority-aged child. Section 615(m)(1)(B). The public agency must notify both the

---

1. There is no evidence in this record that the State of Florida has so provided.

individual student and the parents of that student of the transfer of rights. Section 615(m)(I)(C). For students with disabilities who have reached the age of majority and are incarcerated, all rights, including notice, transfer solely to the majority-aged child. Section 615(m)(1)(D).... Subparagraph D creates an exception to the parental notice requirement for parents of incarcerated youth who have reached the age of majority; they retain no notice rights and "all rights" transfer to the majority-aged child.

5. This Court having found no merit to Defendant's arguments, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Rehearing is hereby **DENIED.**