**MEDIAONE OF DELAWARE, INC. d/b/a Mediaone, Plaintiff,**

v.

**E & A BEEPERS AND CELLULARS, et al., Defendants.**

**No. 98–2108–Civ.**

United States District Court, S.D. Florida.

Oct. 28, 1998.

**1350**

Gordon A. Dieterle, Mattlin & McClosky, Boca Raton, FL, Daniel J. Lefkowitz, Jericho, NY, for Mediaone of Delaware, Inc.

Michael Garcia Petit, Miami, FL, for E&A Beepers and Cellulars, Arturo Morales.

Gary Robert Fine, Fort Lauderdale, FL, for Media Tech International, George Lee.

### ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, ACCOUNTING, EXPEDITED DISCOVERY AND ASSET FREEZE, INCLUDING RESTORATION OF FUNDS

GOLD, District Judge.

THIS CAUSE comes before the Court upon Plaintiff's, MediaOne of Delaware, Inc.'s ("Plaintiff"), Motion for Preliminary Injunction [D.E. # 7]. Plaintiff seeks to enjoin Defendants from engaging in the manufacture, assembly, modification, import, export, sale or distribution of cable television decoder devices, in violation of the Communications Act of 1934, 42 U.S.C. §§ 553 and 605. Plaintiff also moves this Court for an Order freezing the assets of Defendants and expediting discovery. Additionally, Plaintiff requests that Defendants be ordered to provide an accounting and to restore funds appropriated subsequent to a seizure conducted by state law enforcement authorities.

This action alleges violations of 47 U.S.C. §§ 553 and 605. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 for actions arising under federal law, and the Court has pendent jurisdiction over the state law claims asserted in the complaint pursuant to 28 U.S.C. § 1367. Having carefully considered the arguments of the parties, supplemented by oral argument and testimony, and having reviewed the applicable law, and being otherwise advised in the premises, the Court concludes that Plaintiff has satisfied the standards prescribed by Rule 65 of the Federal Rules of Civil Procedure and §§ 553(c)(2)(A) and 605(e)(3)(B)(i) of the Communications Act, entitling it to injunctive relief as supported by the following facts and legal analysis.

## I. Findings of Fact

Plaintiff, a Delaware corporation, is a multiple system cable operator. Pursuant to franchise agreements with various municipalities and political subdivisions, Plaintiff operates and maintains cable television systems to provide cable programming to its subscribers throughout the United States. Subscribers who request Plaintiff's services, pay a monthly fee. Plaintiff's private communication programming signal is not intended for public use.

Plaintiff offers subscribers programming "packages." Basic programming packages are billed at a flat rate. Subscribers may purchase premium services, such as Cinemax, Home Box Office, and Showtime, for an additional fee. Pay-per-view programming, enabling subscribers to order individual movies, sporting events, and other entertainment, is available at a per event fee.

Plaintiff receives its premium programming from the originators of those services via satellite. These signals are then transmitted by Plaintiff to subscribers through a system of coaxial and/or fiberoptic cables. To prevent the interception of programming for which the subscriber has not paid, Plaintiff encodes, or "scrambles," the signals it transmits. In order to view these scrambled signals, subscribers are provided with a decoder device, which is incorporated into a converter. This device decodes the scrambled signals enabling the programming selected and purchased to be viewed clearly on the subscriber's television set. Services not purchased by the

subscriber remain scrambled and unviewable.

The decoder devices provided by Plaintiff to its subscribers possess an "addressibility" feature. This feature, when attached, communicates with Plaintiff's central computer. The feature is essential for its billing of pay-per-view programs. Reception of a pay-per-view program is authorized when a command is sent from the central computer to the converter-decoder of the purchasing subscriber, which then decodes the otherwise scrambled picture of the pay-per-view program to be shown.

A charge for the program is documented and generated by the central computer when the corresponding purchase order and authorization command for viewing the program is received and acted upon through the addressibility function of the subscriber's converter. If a converter descrambles the pay-per-view programming, but is not addressable by Plaintiff's computer, the subscriber using that device will receive all cablecasted signals, including premium and pay-per-view programs without charge.

Scrambling is the primary security method used by cable operators, including Plaintiff, to prevent receipt of cable transmissions by subscribers who have not paid for the services. However, it has become possible for persons to install an unauthorized, or "pirate," decoder device or "descrambler" onto Plaintiff's cable system and to receive all of Plaintiff's scrambled programming, without authorization or paying therefor. Without gaining the subscriber's permission to conduct an on-site inspection, Plaintiff cannot detect or prevent the illegal interception of its programming via pirate descramblers.

Defendant George Lee owns or operates Defendant Media Tech International, and is an officer or employee of Defendant Videotron Incorporated, a Florida corporation. Defendant Arturo Morales, employed by Defendant Videotron Incorporated, operates or is employed by Defendant E & A Beepers Corporation, a Florida corporation conducting business as E & A Beepers & Cellulars.

Plaintiff alleges that Defendants have engaged in the business of modifying and manufacturing pirate decoder devices. Defendants sell these unauthorized cable television decoders and descramblers, capable of illegally intercepting Plaintiff's scrambled signals, for a profit. Defendants have sold and have assisted in the distribution of these unauthorized devices with the specific knowledge and intent that the devices will be used to intercept and receive Plaintiff's scrambled signals by persons not authorized or paying for Plaintiff's services. Defendants' conduct, in modifying, manufacturing, selling, and distributing the pirate decoders, is violative of §§ 553 and 605 of the Communications Act, and § 812.15(4)(b)(1) of the Florida Statutes.

Upon information communicated by the Metro Dade Police Department of an imminent search and seizure at Defendants' facilities, Plaintiff became aware of Defendants' illicit enterprise. Defendants had been the subjects of a sting operation conducted by state and local law enforcement, who had been investigating Defendants' operations for several months. The investigation revealed that Defendants were operating a large-scale pirate decoder modification and sale business. Defendants' premises, which were held out to the public as distributors of electronics, were used as fronts for Defendants' illegal decoder business. Through this multi-agency investigation, it was discovered that Defendants sold their devices to over-the-counter customers, and filled a substantial amount of telephone orders received from throughout the United States as a result of nationwide advertising.

One of Plaintiff's Revenue Protection and Signal Security managers was present during the seizure at Defendants' businesses. While on the premises, he observed several rooms containing modified decoding devices and components and numerous decoder modification tools. He la-

ter saw unmodified devices, descrambled chips, copies of advertisements, and computerized sales records. Although some of the advertisements stated that Defendants did not sell the illegal devices in Florida, sales records reflecting Florida purchases and sales to areas serviced by Plaintiff were observed. Some of this equipment was capable of intercepting Plaintiff's scrambled signals. Much, but not all, of the property on Defendants' premises relative to the unauthorized manufacture and sale of pirate decoders was seized by the police. In addition to the seizure of the pirate decoders, business records and proceeds of decoder sales on the premises, Defendants' assets were ordered frozen. However, Plaintiff learned that subsequent to police intervention, Defendant Lee had issued himself a check in the amount of $130,000.

Subsequent to the seizure on September 1, 1998, Plaintiffs filed a complaint and moved, on an *ex parte* basis, for a temporary restraining order, enjoining Defendants' further sales of its devices, requesting a restraint be placed on Defendants' assets, and seeking other relief. This Court found that, based on the verified complaint and affidavits submitted by Plaintiff, it did not appear that there was immediate and irreparable injury, or that loss of damage would result to Plaintiff before Defendants could be heard in opposition. Therefore, Plaintiff's motion for an *ex parte* order was denied. Instead, Plaintiff was directed to serve the complaint and motion for preliminary injunction on Defendants. Defendants were directed to expedite their responses, after which a hearing was scheduled.

At the October 8, 1998 hearing, the parties were afforded the opportunity to brief the issues raised in the record, and to present witnesses and evidence. Upon adjournment, the parties were permitted to file memoranda summarizing their positions and arguments. A review of all submissions supports the grant of relief which Plaintiff requests.

## II. Discussion and Analysis

The Communications Act prohibits: (1) the manufacture and/or sale of converter-decoders with the specific knowledge or intent that the device will be used for the unauthorized interception and reception of cable television programming signals, 47 U.S.C. § 553(a)(1); and (2) the manufacture, assembly, modification, import, export, sale or distribution of such devices, knowing or having reason to know that they will be used primarily in the unauthorized interception or reception of cable programming signals. 47 U.S.C. § 605(e)(4). Each individual device sold, manufactured, assembled, or distributed in contravention of these sections is a separate violation. *See id.*

Having discovered Defendants' illicit and infringing enterprise, Plaintiff has applied for preliminary injunctive relief under §§ 553 and 605. These sections authorize a court to enter "permanent injunctive relief on such terms as it deems reasonable to prevent or restrain violations" of the statutes. 47 U.S.C. §§ 553(c)(2)(A) and 605(e)(3)(B)(i). Plaintiff believes this relief is necessary to ensure that Defendants cannot cause the destruction or disappearance of relevant evidence and dissipation or misappropriation of their assets prior to adjudication of Plaintiff's claims on the merits. At the hearing, Plaintiff presented competent evidence that Defendants engaged in activities prohibited by §§ 553 and 605.

Defendants' attempt at rebutting Plaintiff's evidence and allegations was unconvincing. Rather than explaining the presence of the illegal devices, Defendant has tried to dismiss Plaintiff's meritorious claims on the ground that Plaintiff lacks standing to bring this action. Specifically, Defendants argue that, since Plaintiff has not demonstrated that any subscribers to Plaintiff's services has used devices manufactured or sold by Defendants to gain unauthorized access to Plaintiff's premium and pay-per-view services, Plaintiff is not a "person aggrieved" under § 553, and

therefore is not entitled to the relief provided in that section.

■ Defendants' challenge to Plaintiff's standing is unpersuasive. Section 553(c)(1) specifically provides that "any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States District Court...." "Any person aggrieved" is defined, in part, in § 605(d)(6) as "any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming." Courts are instructed to construe the term "any person aggrieved" broadly. *See Joe Hand Promotions v. Rennard Street Enterprises*, 975 F.Supp. 746, 753 (E.D.Pa.1997) (quoting reference omitted). In view of Plaintiff's proprietary interest in the lawful manufacture and distribution of its cable programming devices, Defendants' unauthorized manufacture and distribution of decoders with the possibility of intercepting Plaintiff's signals in violation of §§ 553 and 605, and the definition of the term and broad construction that must be given, Plaintiff is a "person aggrieved" by Defendants' conduct in violation of the Communications Act, and is thereby authorized to institute this action against Defendants. *See Time Warner Cable of New York City v. Barnes*, 13 F.Supp.2d 543, 548 (S.D.N.Y.1998). Plaintiff, having standing to bring this action, must illustrate its entitlement to injunctive relief.

## A. Legal Standard for Preliminary Injunction

■ Entitlement to preliminary injunctive relief requires the movant to demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) the threatened injury to the movant outweighs any potential harm to the party being enjoined; and (4) that granting the injunction would not be adverse to the public interest. *See American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir.1998). Although courts are not confined to fixed quantitative parameters for applying the factors necessary for determining the propriety of injunctive relief, the issuance of a preliminary injunction is an extraordinary equitable remedy which should not be granted absent a clear showing that the moving party has met its burden. *See Cafe 207 v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir.1993). The primary justification for granting a preliminary injunction is to preserve the court's ability to render a meaningful decision and provide an effective remedy after a trial on the merits. *See Tefel v. Reno*, 972 F.Supp. 623, 633 (S.D.Fla.1997). Findings made on an application for a preliminary injunction are not controlling at a later hearing to impose a permanent injunction. *See E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1527 n. 1 (11th Cir.1985).

■ Moreover, when authority for the issuance of "statutory" injunctive relief is provided by legislative enactment, Plaintiff, as an aggrieved party is entitled to such relief upon a showing that Defendants violated the statute without regard to the traditional equitable prerequisites of injunctive relief. *See, e.g., Burlington Northern R.R. Co. v. Department of Revenue*, 934 F.2d 1064, 1074–75 (9th Cir.1991); *Storer Communications, Inc. v. Mogel*, 625 F.Supp. 1194, 1202 (S.D.Fla.1985). With these tenets in mind, and under the factual circumstances of this case and the law interpreting violations of the Communications Act, it is apparent that Plaintiff has satisfied the requirements necessary for a preliminary injunction to issue.

### 1. *Substantial Likelihood of Success*

The statement of the facts set forth above indicates a substantial likelihood that Plaintiff will succeed on the merits of its complaint. Plaintiff presented uncontroverted evidence that Defendants were in possession of devices used for the sole purpose of assisting in the unauthorized interception of cable programming services provided by cable operators, including

Plaintiff. This clear violation of the Communications Act was recognized by Florida authorities, who, subsequent to a lawful search of Defendants' premises, uncovered substantial evidence of violations which the statute was designed to prevent.

The devices in Defendants' possession had non-addressibility features to undermine Plaintiff's ability to track unauthorized interception. These features, which defeat security measures of cable operators, clearly show Defendants had the intent to assist in the theft of cable programming services. Although, as Defendants argue, Plaintiff has not yet substantiated its claim that some of the devices in fact intercepted Plaintiff's signals, a lack of evidence of unauthorized access would only affect the amount of actual damages recoverable by Plaintiff. It does not, as Defendants suggest, act as a bar against success on the merits of a claim for violations of the Communications Act and all recovery available thereunder. Thus, the Court finds Plaintiff's have satisfied their burden of showing a likelihood of success on the merits.

### 2. Substantial Threat of Irreparable Injury

Nearly all courts agree that a party seeking injunctive relief need only make a minimum showing of irreparable harm where the nonmovant has violated a statute that authorizes the issuance of injunctions. *See, e.g., Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir.1984); *see also EEOC v. Cosmair, Inc.,* 821 F.2d 1085, 1090 (5th Cir.1987); *Intermedia Partners Southeast v. QB Distributors L.L.C.,* 999 F.Supp. 1274, 1283 (D.Minn.1998); *Time Warner Cable of New York City v. Freedom Electronics, Inc.,* 897 F.Supp. 1454, 1460 (S.D.Fla.1995) ("several federal courts have held that absence of justification for violation of clear statutory rights virtually eliminates the necessity of showing irreparable harm"). Plaintiff has sufficiently demonstrated that Defendants, having been found to have unauthorized decoders in their possession and for which they were criminally charged, violated a "clear statutory right." Moreover, the fact that the precise quantity of damages suffered by Plaintiff as a result of Defendants' unlawful activities may be difficult or impossible to calculate, indicates that Plaintiff lacks an adequate remedy at law for Defendants' acts. *See id.* Therefore, justification exists for finding that the irreparable harm element supporting an application for a preliminary injunction has been satisfied.

### 3. Plaintiff's Injury Outweighs the Injury to Defendants

Issuance of a preliminary injunction weighs heavily in Plaintiff's favor, since Defendants will not suffer any harm to any legitimate interest. In balancing the parties' respective hardships, an issuance of a preliminary injunction will merely enjoin Defendants from conducting a business which is already prohibited by state and federal law. *See, e.g., Storer Communications,* 625 F.Supp. at 1203 ("The alleged illegal activities of the defendant are not worthy of any protection ... Defendant has no right to earn money by violating the law [and] ... will suffer no harm if an injunction is issued which simply requires him to obey the law."). Conversely, the sale of the unauthorized devices by Defendants may result in irreparable harm to Plaintiff's business integrity and revenues. Accordingly, there is ample support for determining that the potential harm to Plaintiff far outweighs any legitimate harm to Defendants upon the issuance of a preliminary injunction.

### 4. The Public Interest Favors Granting Preliminary Injunctive Relief

Finally, the Court finds that the public interest will be served by the issuance of the requested injunction. Halting Defendants' manufacture and sale of unauthorized decoding devices promotes public interest by preventing further conduct that Congress has declared to be illegal under § 553. *See, e.g., Freedom Electronics,* 897 F.Supp. at 1460.

Enforcing "an act of Congress is hardly contrary or adverse to the public interest." *Storer Communications*, 625 F.Supp. at 1203. Since Plaintiff's have been granted vested rights in providing its services through valid franchises, protecting the rights of the municipalities and localities to promote their franchises serves the public interest. *See id.* Moreover, subscribers who use authorized decoders will be forced to bear a disproportionate share of the costs of maintaining cable systems and security measures necessary to detect and prevent unauthorized interception. *See id.* Therefore, the Court is persuaded that the preliminary injunction requested by Plaintiff would be a benefit, rather than a detriment to, the public interest.

■ Plaintiffs have successfully demonstrated their entitlement to the relief requested. Whereas Plaintiff has proffered several reasons for finding that issuance of a preliminary injunction is prudent and necessary, Defendants have offered no sound reason why Plaintiff's application should be denied. Thus, under the four-factor Eleventh Circuit analysis, the issuance of an injunction is appropriate under the circumstances.

### B. Plaintiff's Request for an Asset Freeze

As part of its injunctive relief, Plaintiff seeks an order freezing Defendants' assets and requiring Defendants to restore funds withdrawn and/or expended from Defendants' accounts subsequent to the seizure by the Florida authorities. Plaintiff contends that the restraint on Defendants' accounts is necessary to maintain the status quo until this action is adjudicated on the merits and in the event Plaintiff proves entitlement to monetary damages.

■ Contrary to Defendants' argument that the Fifth and Eleventh Circuits disfavor pre-judgment asset freezes, the Eleventh Circuit has permitted district courts to "order preliminary relief, including an asset freeze, that may be needed to make permanent relief possible." *Federal Trade Comm'n v. Gem Merchandising*

*Corp.*, 87 F.3d 466, 469 (11th Cir.1996). Moreover, when the nature of the action involves the public interest, the district courts' equitable powers are "even broader and more flexible." *Id.* Here, the Court has previously granted equitable relief in the form of an asset freeze. *See Freedom Electronics*, 897 F.Supp. at 1461. This Court finds that, based on the unrebutted allegation that Defendant Lee has withdrawn a significant amount of funds since the seizure of property and asset freeze imposed by the Florida authorities, an asset freeze is warranted. Furthermore, Plaintiff's request for an accounting is justified on the same basis. The asset freeze will preserve the status quo and ensure that Plaintiff can avail itself of its possible remedies. The exact nature of the freeze and any disgorgement of withdrawn funds will be addressed in more detail in the order which follows.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Injunction, Accounting, Expedited Discovery, and Asset Freeze, Including Restoration of Funds [D.E. # 7] is GRANTED. It is further

**ORDERED AND ADJUDGED** that Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, are enjoined and restrained from the sale, transfer, advertisement, and/or offer for sale, modification, manufacture, storage and distribution of cable television decoding devices and related equipment and/or the rendering of assistance whatsoever in the sale, transfer, advertisement, modification, manufacture, storage or distribution of such equipment. It is further

**ORDERED AND ADJUDGED** that Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, are restrained from trans-

ferring, removing, encumbering, or permitting the withdrawal of any assets or property, presently or formerly belonging to Defendants, jointly or severally, whether real or personal, tangible or intangible, including but not limited to cash, bank accounts of any kind, stock and bond accounts, and title to Defendants' business properties, except upon further order of this Court or written agreement of the parties. This restraint shall include both personal and business assets until a determination can be made as to the appropriate measure of damages and other relief and whether the personal or business assets are the product of Defendants' illegal business. Defendants may submit a request for release of funds to pay for ordinary business and personal expenses, including attorneys' fees, if Defendants can demonstrate, through an affidavit or otherwise, a need for such funds. Defendants may also withdraw funds upon written agreement of the parties. It is further

**ORDERED AND ADJUDGED** that Defendants shall forthwith provide Plaintiff with a list of all accounts, business or personal, in the control of Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, to implement the restraint on assets as set forth above.

**ORDERED AND ADJUDGED** that the assets set forth above shall remain frozen, and the financial institutions in which these assets are located, shall not permit the transfer or withdrawal of assets from Defendants' accounts except as provided by further order of this Court or by written agreement of the parties. It is further

**ORDERED AND ADJUDGED** that Defendants will forthwith provide a log of all funds withdrawn from any and all accounts, business or personal, in the control of Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in con-

cert with them, from September 1, 1998 to the present. It is further

**ORDERED AND ADJUDGED** that Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, shall forthwith provide Plaintiff with an accounting, listing the total number of sales and purchases of cable programming decoders, converters, or descramblers, made by or on behalf of any Defendant to or from any person and/or entity, and include any and all profits, transfers or withdrawals of assets, property or any other funds made by, to and/or between any Defendant from the inception of Defendants' respective businesses.

**ORDERED AND ADJUDGED** that Defendants are under an obligation to identify all locations at which decoding devices are held, stored, manufactured, modified, received, shipped directly or indirectly by Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, or locations where their records are kept or from which telephone or other sales are made and shall also provide access to computers on which information regarding sales, purchases, and other business records are stored. It is further

**ORDERED AND ADJUDGED** that Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, shall provide Plaintiff with all customer lists, receipts, purchase orders and other information concerning the identity and whereabouts of purchasers of Defendants' unauthorized cable decoding equipment of which Defendants have knowledge, within twenty (20) days from the date of this Order. It is further

**ORDERED AND ADJUDGED** that except for the materials ordered herein to be

produced on an expedited basis, further discovery in this action shall be conducted pursuant to the times prescribed by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of Florida. It is further

**ORDERED AND ADJUDGED** that Plaintiff shall post an adequate security bond with the Clerk of Court in the amount of $50,000 in accordance with Rule 65(c) of the Federal Rules of Civil Procedure.