KINGVISION PAY–PER–VIEW, LTD.

v.

**John L. ROCCA, et al.**

**No. CIV. 00–407–JD.**

United States District Court,
D. New Hampshire.

Jan. 2, 2002.

Gregory W. Swope, Swope & Nicolosi PLLC, Concord, NH, Julie Cohen Lonstein, Lonstein Law Office, Ellenville, NY, for Plaintiff.

*ORDER*

DICLERICO, District Judge.

The plaintiff, Kingvision Pay–Per–View Ltd., brings suit against the defendants, John L. Rocca, Donna Nassoura, and William Kelley, individually and as officers, directors, shareholders and principals of On the Rocks, Inc., alleging that they were involved with an unauthorized broadcast of a boxing match in violation of 47 U.S.C. § 553 and §§ 605(a) and (e)(4). The plaintiff also alleges common law contract claims. The plaintiff seeks statutory damages and attorney's fees. The defendants move for summary judgment. The plaintiff objects to the defendants' motion and cross-moves for summary judgment in its favor.

*Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). " 'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. A fact is material if it carries with it the potential to

affect the outcome of the suit under the applicable law.'" *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000), *quoting Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir.1996).

When considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *See Davila–Perez v. Lockheed Martin Corp.*, 202 F.3d 464, 466 (1st Cir. 2000). "When deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn." *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir.1997).

*Background*

The plaintiff entered into a licensing agreement with Don King Productions for the exclusive rights to distribute the November 8, 1997, Holyfield/Moorer boxing match and all undercard fights to commercial establishments in New Hampshire. Commercial establishments were required to purchase broadcast rights for the event directly from the plaintiff. The plaintiff then transmitted the event by satellite signal to commercial subscribers, who received the broadcast by satellite dish or by direct broadcast satellite (DBS) system. The plaintiff did not have residential broadcast rights. The local cable provider, Media One, had the rights to provide the fight to residential pay-per-view subscribers. The plaintiff did not have any agreement with Media One regarding the fight.

In an attempt to crack down on piracy of its pay-per-view broadcasts, the plaintiff sub-contracted with auditors to visit New Hampshire establishments in search of unauthorized broadcasts. For the Holyfield event, the plaintiff provided the auditors with a list of establishments that had purchased broadcast rights, and instructed the auditors to visit establishments other than those on the list.

The defendants own and operate On the Rocks, a restaurant/bar in Manchester, New Hampshire. The defendants did not purchase commercial broadcast rights for the Holyfield event. An auditor reported that at approximately 10:35 p.m. on November 8, 1997, he entered the second floor of On the Rocks, the restaurant portion of the establishment, and observed an undercard fight on a television in the corner of the bar. According to the report, approximately sixty people were watching the fight.

The defendants assert that two employees of On the Rocks independently brought a residential cable box to the establishment, used it to pull the fight off cable, and broadcast the fight on the bar television. The plaintiff does not dispute that the event was broadcast in On the Rocks by use of a cable box.

The parties dispute the nature of the broadcast. The plaintiff argues that the fight was shown to at least fifty people in On the Rocks, for the commercial advantage of the defendants. The defendants argue that the employees showed the fight to a few personal friends.

In August of 2000, the plaintiff brought suit against the defendants, alleging willful violations of 47 U.S.C. § 553, § 605(a) and § 605(e)(3), as well as common-law claims of breach of contract and breach of implied contract.[1]

The defendants move for summary judgment on the statutory violations, arguing

1. A count of fraud was dismissed in March of 2001 for failure to satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). *See Kingvision Pay–Per-* *View, Ltd., v. Theresa Vergas, et al.*, No. 00–407–JD, 2001 WL 311199, at *2 (March 26, 2001).

that § 605 does not regulate their alleged actions, and that the plaintiff lacks standing to sue under either § 553 or § 605. The plaintiff objects, and cross-moves for summary judgment on the statutory claims.

*Discussion*

The defendants argue that § 605 prohibits the unauthorized interception of radio communications, but not wire communications, and therefore does not apply to their use of a cable box to intercept the cable broadcast of the fight. Section 605(a) states: "No person not being authorized by the sender shall intercept any *radio communication* and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person . . . and use such communication . . . for his own benefit or for the benefit of another not entitled thereto." (Emphasis added.) By statutory definition, "[r]adio communication . . . means the *transmission by radio* of writing, signs, signals, pictures, and sounds of all kinds . . . ." 47 U.S.C. § 153(b)(Emphasis added.) Section 605(d)(1) defines "satellite cable programming" to mean "video programming which is transmitted via satellite and which is primarily intended for the direct receipt by cable operators for their retransmission to cable subscribers." Neither party disputes that satellite programming is regulated as radio communication by § 605, or that the Holyfield fight originated as a satellite communication.

The defendants argue, however, that once the satellite communication was received by Media One and transmitted via cable, its nature changed to a wire communication, which is regulated exclusively by § 553. Section 553(a)(1) provides: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered *over a cable system*,

unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." (emphasis added). By statutory definition, "[w]ire communication . . . means the transmission of writing, signs, signals, pictures, and sounds of all kinds *by aid of wire, cable, or other like connection* . . . ." 47 U.S.C. § 153(a)(Emphasis added.)

The defendants maintain that § 605 regulates radio communication exclusively, and § 553 regulates cable communication exclusively. The defendants did not intercept any radio communications through the cable box, and they assert that they have no capability to receive or broadcast direct satellite signals. *Cf. Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 684 F.Supp. 1138 (D.Mass.1988) (bar liable under § 605 for unauthorized broadcast of radio communications intercepted by satellite dish). Rather, they assert, they intercepted local cable service, and therefore § 553, not § 605, is applicable. The plaintiff responds that § 605 applies because the Holyfield fight originated as a satellite program, even though it was in cable format when the defendants intercepted it.

The First Circuit has not yet construed the sections at issue. The plaintiff relies on *Int'l Cablevision, Inc. v. Sykes*, which held that distributors of unauthorized cable descrambler "black boxes" were liable under both § 605 and § 553, because the descramber boxes were ultimately used to intercept radio communication, even if the radio communication was transmitted by cable at the point of interception. *See* 75 F.3d 123, 123–24 (2d Cir.1996).

The United States Courts of Appeals for the Third and Seventh Circuits declined to follow *Sykes*, however. The Third Circuit held in *TKR Cable Co. v. Cable City Corp.* that a plain reading of § 553 and § 605 shows them to be mutually exclusive. *See* 267 F.3d 196, 207 (3d Cir.2001). "Once a

satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605." *TKR Cable*, 267 F.3d at 207. The Seventh Circuit reached the same conclusion in *United States v. Norris*, reasoning that, "[i]f Congress had intended § 605 to govern the interception of cable television programming offered over a cable network, it would have had no reason to enact § 553." 88 F.3d 462, 468 (7th Cir.1996). The District of Rhode Island has relied on the statutory construction of § 605 and § 553 employed by the Third and Seventh Circuits. *See TCI Cablevision of New England v. Pier House Inn, Inc.*, 930 F.Supp. 727, 737 (D.R.I. 1996).

All three circuits conducted extensive inquiries into the legislative histories of the sections at issue. The first version of § 605 was enacted by the Communications Act of 1934 and regulated the interception of both radio and wire communications. *See* Communications Act of 1934, ch. 652. The definitions provided in 47 U.S.C. § 153(a)-(b) distinguished wire and radio as two separate methods of communication. In 1968, Congress amended § 605 to remove all reference to wire communications, except in the first clause, which applies to communications personnel. *See* Omnibus Crime Control and Safe Streets Act of 1968 § 803, 82 Stat. 197, 223. At the same time, Congress enacted a new chapter, 18 U.S.C. § 2510 et seq., to regulate wire taps and other law enforcement communication tools. *See TKR Cable*, 267 F.3d at 201, *citing* S.Rep. No. 1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2196–97. Section 2510 only regulated wire

communications distributed by a common carrier, however, and cable companies did not fall under the statute's purview. *See TKR Cable*, 267 F.3d at 201 n. 2, *citing United States v. Southwestern Cable Co.*, 392 U.S. 157, 169 n. 29, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968). To combat the growing problem of cable piracy, Congress enacted 47 U.S.C. § 553, Cable Communications, which prohibits interception of communications transmitted over a cable system. *See Pier House Inn*, 930 F.Supp. at 735, *quoting* H.R.Rep. No. 98–934, (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720.

Interpreting § 605 to encompass interception of programs from a cable network would render § 553 superfluous, a result contrary to the canons of statutory construction. *See Norris*, 88 F.3d at 468; *Pier House Inn*, 930 F.Supp. at 737. It is more logical to construe § 605 as applying to radio signals, in this case satellite programming, transmitted through the air, and § 553 as applying to radio communications transmitted via a wire or cable system. *See Norris*, 88 F.3d at 466; *TCI Cablevision*, 930 F.Supp. at 737.[2] "This interpretation is consistent with the basic canon of statutory construction which counsels that statutes must be read in harmony with one another so not to render one nugatory or superfluous." *Pier House Inn*, 930 F.Supp. at 734. Since the plaintiff does not dispute that the defendants intercepted a cable transmission, § 605 does not apply, and summary judgment is granted on counts I and II in favor of the defendants.

---

**2.** If § 605 were applicable to satellite programs intercepted from a wire transmission, the only plausible reading of § 553 would be to regulate "purely wire-bound, ground-initiated cable transmissions" over cable lines. *TKR Cable*, 267 F.3d at 206. However, "a thorough analysis of the circumstances surrounding the passage of the Cable Act and its legislative history shows that Congress could not have enacted § 553 with the primary purpose of filling an obscure niche in cable piracy enforcement." *Id.* at 207.

The plaintiff's remaining statutory count was brought pursuant to § 553(a). The defendants argue that the plaintiff lacks standing to bring suit under § 553.[3] Section 553(c)(1) provides: "Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court ...." Unlike § 605, § 553 does not define "person aggrieved." Section § 553(a)(1) states: "No person shall intercept or receive ... any communications service offered over a cable system, unless authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

■ The defendants contend that since § 553 applies to cable transmissions, a non-cable provider could not be a "person aggrieved," entitled to bring suit under the section. The plaintiff fails to respond specifically to the defendants' argument. A moving party is not automatically entitled to summary judgment if the opposing party does not respond, however, since both parties agree on the material facts, the defendants have met their burden as the moving party, and the court will decide the standing issue as a matter of law. *See Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir.1989).

■ The narrow language of § 553(a)(1) prohibits interception of services over a cable system, unless authorized by a cable operator. Since a cable operator must authorize interception of cable communications under § 553, it is the cable operator who is aggrieved when a person intercepts cable without authorization. This interpretation is supported by the legislative history of § 553, which reveals Congress's intent to provide piracy protection for the cable industry. *See* H.R.Rep. No. 98–934, (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720.

■ In contrast, the plaintiff contracts directly with commercial establishments to license broadcast rights for its pay-per-view events, and then transmits the event directly to the establishment via satellite signal which is a radio communication. The plaintiff is not a cable operator, nor does the plaintiff have any contractual or proprietary relationship with Media One. *Cf., MediaOne of Delaware, Inc. v. E&A Beepers and Cellulars*, 43 F.Supp.2d 1348, 1353 (S.D.Fla.1998) (finding plaintiff has standing to sue under § 553 where plaintiff, a cable operator, had a proprietary interest in the lawful manufacture and distribution of its cable programming devices).

Media One, as a cable provider, would appear to be a "person aggrieved" under § 553. The defendants and Media One have settled their dispute. In the court's opinion, Congress did not intend to confer standing under § 553 on a plaintiff who is not a cable operator. The plaintiff, therefore, lacks standing to sue under § 553, and summary judgment is granted on count III in favor of the defendants.

Having disposed of the defendants' summary judgment motion in the defendants' favor, no issues remain to be resolved in the plaintiff's cross-motion for summary judgment. The plaintiff's cross-motion for summary judgment is denied.

### Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 28), is granted as to Counts I, II, and III. The plaintiffs' cross-motion for

---

**3.** Because the court is granting summary judgment in the defendants' favor on the counts under § 605, the defendants' argument that the plaintiff lacks standing under § 605 need not be addressed.

summary judgment on those counts (document no. 29) is denied.

The parties should make a good faith effort to resolve this case. The plaintiff should carefully review the viability of the remaining contract claims.

SO ORDERED.