**KANSAS CITY CABLE PARTNERS, a General Partnership By: Time Warner Entertainment Co., L.P., a General Partner Through its Kansas City Division, Plaintiff,**

v.

**Carolyn ESPY, et al, Defendants.**

No. 01–2270–JWL.

United States District Court,
D. Kansas.

March 14, 2003.

---

**13.** *Hill v. Hill,* 168 Kan. 639, 215 P.2d 159, 161 (1950).

James P. Colgan, Colgan Law Firm, Kansas City, KS, for Jesse Vasquez.

Jason J. Fletes, Hill, Beam-Ward & Kruse & Wilson, LLC, Overland Park, KS, Robert D. Kingsland, Jason P. Osteen, Dempsey & Kingsland, P.C., Kansas City, KS, for Ricky Minor.

Julie Cohen Lonstein, Lonstein Law Office, P.C., Ellenville, NY, Robert M. Pitkin, Levy & Craig, P.C., Kansas City, MO, for Kansas City Cable Partners.

### MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Kansas City Cable Partners brings this action against Carolyn Espy and others seeking statutory damages for alleged violations of 47 U.S.C. § 553 and 47 U.S.C. § 605. It alleges that Ms. Espy utilized "compatible bootleg 'pirate' converter-decoder devices" to descramble and receive the cable company's scrambled telecommunications signals. This matter is before the court on Kansas City Cable Partners' motion for summary judgment on its claims against Ms. Espy (Doc. 45). It alleges that Ms. Espy's failure to timely respond to its request for admissions deems each request admitted under Federal Rule of Civil Procedure 36(a). Such admissions, according to Kansas City Cable Partners, are sufficient to entitle them to summary judgment regarding liability. The court agrees in part and grants Kansas City Cable Partners' motion for summary judgment as to liability on its claim under 47 U.S.C. § 553. The court denies the motion as to the claim under 47 U.S.C. § 605.

### I. Procedural Background

Kansas City Cable Partners commenced this action against Ms. Espy on or about June 1, 2001, alleging that she tampered with Kansas City Cable Partner's cable

television system and engaged in unauthorized reception of the company's private communications signals by utilizing "compatible bootleg 'pirate' converter-decoder devices to descramble and receive the company's telecommunications signals" in violation of 47 U.S.C. §§ 553 and 605.

Ms. Espy filed an answer on August 5, 2001, but did not serve Kansas City Cable Partners. Unaware of the filed answer, Kansas City Cable Partners filed a motion for default judgment on or about November 9, 2001. The court subsequently denied the motion because Ms. Espy had filed an answer.

On March 13, 2002, Kansas City Cable Partners served upon Ms. Espy its request for admissions, Rule 26 disclosures, interrogatories and discovery demands. Ms. Espy has not responded to the request for admissions.

On July 30, 2002, Kansas City Cable Partners filed the instant motion for summary judgment as to liability. After Ms. Espy did not respond, the court granted the motion (Doc. 52). Ms. Espy then filed papers the court interpreted as a motion to reconsider the court's October 22, 2002 order granting the motion for summary judgment. She alleged that she never received the motion for summary judgment. The court granted her motion to reconsider (Doc. 61) and permitted her to file a response to the motion for summary judgment. Her response was filed on December 23, 2002. Kansas City Cable Partners filed its reply on January 30, 2003. It apparently had not been served with Ms. Espy's response and was first informed of the response by the court on or about

January 24, 2003. Ms. Espy filed a surreply on February 12, 2003.[1]

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III. Analysis

Kansas City Cable Partners contends that Ms. Espy has failed to respond to its request for admissions, that the failure to respond deems such requests admitted under Federal Rule of Civil Procedure 36(a), and that such admissions entitle Kansas City Cable Partners to summary judgment regarding liability on its claims under 47 U.S.C. §§ 553 and 605.

---

1. Under D. Kan. Rule 7.1(b), parties are permitted to file a dispositive motion, a response and a reply. Surreplies typically are not permitted. *Metzger v. City of Leawood,* 144 F.Supp.2d 1225, 1266 (D.Kan.2001). A surreply is particularly inappropriate in this ac-

tion because Ms. Espy has not alleged, and the court does not find, that Kansas City Cable Partners raised new arguments in its reply. Thus, the court disregards the surreply.

Ms. Espy, proceeding pro se, responds by alleging that lightening struck a transformer on a telephone pole in her yard and that subsequent to that event she had problems with her cable. She notes that the storm also took out her surge protector and VCR. She alleges that she returned her cable "box" three times over a three week period after the storm and if any of the "boxes" were tampered with such boxes were given to her by the cable company.

Kansas City Cable Partners' reply points out that Ms. Espy has not responded to its request for admissions, that her response failed to address this point, and that the few facts set forth in her response are "conclusory and self-serving and are not offered as admissible evidence." It notes that her papers are in the format of a motion and have not been sworn under penalty of perjury.

Based on these arguments, the court concludes that Kansas City Cable Partners is entitled to summary judgment regarding liability on its claim under 47 U.S.C. § 553 but not on its claim under 47 U.SC. § 605.

### Request for Admissions

The request for admissions, which was served on Ms. Espy, asked Ms. Espy to respond to the truth of the following statements:

1. Defendant was a subscriber to the plaintiffs['] cable television service lines which carried programming supplied by the plaintiff.

[2.] Defendant installed a Cable Converter Box and/or device not supplied by plaintiff upon cable service lines which carried programming supplied by the plaintiff.

[3.] In installing and using said Cable Converter Box and/or device defendant accessed premium cable services, pay-per-view events and other proprietary signals of the plaintiff without paying plaintiff for [the] same.

[4.] The approximate monthly value of such programming is approximately $5,000.00.

[5.] Defendant intended to receive such premium and pay-per-view programming without payment to plaintiff when purchasing and installing said Cable Converter Box and/or device.

[6.] Defendant did in fact receive premium and pay-per-view programming by using said Cable Converter Box and/or device without paying plaintiff for such services.

[7.] Said Cable Converter Box/Device was installed at or near defendants premises.

The request for admissions also stated, in the instruction section on the first page, that "[i]f you fail to respond within 30 days from the date hereof, you waive objection to the Requests, and plaintiff will request the Court deem such matters admitted." This instruction is in bold print and underlined.

 Because Ms. Espy failed to respond to the request for admissions, each of the seven statements is deemed admitted. *Reynolds v. Delmar Gardens of Lenexa, Inc.*, 2003 WL 192481, *3 (D.Kan. Jan.2, 2003)(pursuant to Fed.R.Civ.P. 36, defendant is deemed to have admitted each request for admission by failing to respond within 30 days); *Kan. Nat'l Bank & Trust Co. v. Allmon*, 1990 WL 182350, *1 (D.Kan., Oct.29, 1990) (same). Thus, the court must determine whether these admissions, coupled with the affidavits attached to Kansas City Cable Partners' papers, are sufficient to support Kansas City Cable Partners' motion for summary judgment. Although Ms. Espy filed a response to the motion for summary judgment, as Kansas City Cable Partners points out, she failed to verify her complaint or otherwise attach an affidavit or other evidence supporting her position. As such, she has

failed to come forth with admissible evidence to support her allegations.

### Verified Complaint and Affidavits

In addition to the admissions, Kansas City Cable Partners set forth detailed background facts in its verified complaint and affidavits from Julie Cohen Lonstein (its attorney) and Stanley F. McGinnis (President of Secure Signals International).[2] The verified complaint explains that Kansas City Cable Partners obtained the right to construct, operate, and maintain television systems in, among other counties, parts of Wyandotte County, Kansas. It offers cable television services to subscribers who request and pay for them. Its programming is offered to subscribers in "packages" of programming services. "Basic" and "Standard" packages of programming services may be purchased at a monthly rate. Subscribers may also purchase certain "premium" programming services, such as Cinemax, HBO, and Showtime, for an additional monthly fee. Pay-per-view programming, a service which permits subscribers to purchase individual movies, sporting events, or other entertainment, may also be purchased for a per event or per movie fee.

According to the verified complaint, the signals for all of Kansas City Cable Partners' cable television services are transmitted to Time Warner Kansas City Cable's reception facilities from orbiting satellites and other means of over-the-air radio communication. Kansas City Cable Partners then retransmits these same signals to subscribers' homes and businesses through a network of cable wiring and equipment. In order for subscribers to receive these transmitted cable television signals on their television sets, Kansas City Cable Partners provides each subscriber with a device, known as a "converter," that converts the multiple signals simultaneously transmitted over the cable network into different "channels," which can then be viewed on subscribers' television sets.

To prevent subscribers from receiving programming services for which they have not paid, the verified complaint explains that Kansas City Cable Partners encodes or "scrambles" the signals for specific programming services. Subscribers purchasing scrambled programming services are provided with a device known as a "descrambler" or "decoder," which is incorporated into the converter. The descrambler decodes the scrambled service so that the programming can be viewed clearly on the subscriber's television set.

The verified complaint explains that it is possible to install an unauthorized or "pirate" converter-decoder onto Kansas City Cable Partners' cable television system or otherwise tamper with Kansas City Cable Partners' equipment in order to receive all of the scrambled programming without authorization. By utilizing such a device, Kansas City Cable Partners alleges that Ms. Espy received programming belonging to it for which she did not pay.

To support its theory that Ms. Espy obtained illegal programming, Kansas City Cable Partners included the affidavit of Mr. McGinnis with its summary judgment

---

**2.** The court questions whether the factual allegations of the verified complaint constitute admissible evidence. The complaint is verified by Kansas City Cable Partners' attorney, Julie Cohen Lonstein—not a representative or employee of Kansas City Cable Partners that has first hand knowledge of the events alleged in the complaint. Ms. Lonstein explains that her knowledge of the facts contained in the complaint was obtained by reviewing the file and conversing with her client. Thus, the court questions whether Ms. Lonstein has sufficient first hand knowledge of the facts contained in the complaint. Nonetheless, the court will accept the facts as true for purposes of this motion because it does not impact the court's decision.

motion. Mr. McGinnis, President of Secure Signals International, states that his company was hired by Kansas City Cable Partners to provide "consulting and security services aimed at identifying, prosecuting and combating theft of [Kansas City Cable Partners'] services and signal." He explains that Kansas City Cable Partners is an "Access Control Cable Television system" which utilizes "Motorola Addressable Control" technology to provide scrambling and access control of all analog encoded services in specific areas where service is provided. As a result, unless payment is made for a service, a cable subscriber tuning into a particular premium or pay-per-view channel will see a scrambled picture with inaudible sound. But these encrypted signals may be unscrambled by devices, known as "black boxes," designed to defeat the security measures employed by the cable industry.

To prevent the use of such unauthorized devices, Mr. McGinnis explains that cable companies such as Kansas City Cable Partners use "anti-theft countermeasures." One such countermeasure is firing an electric signal, known in the industry as a "Silver Bullet," through the system. This "anti-theft countermeasure identifies any illegal device on [Kansas City Cable Partners'] system which is receiving unauthorized cable services." A Silver Bullet through the system in May, 2000, identified Ms. Espy's terminal "as one utilizing an unauthorized Cable Converter Box and/or device to receive premium programming, pay-per-view events and other proprietary signals" belonging to Kansas City Cable Partners. The effect of the Silver Bullet hit was to disrupt Ms. Espy's cable service. Upon notice from Ms. Espy that her cable service had been interrupted, Kansas City Cable Partners reinstated Ms. Espy's cable service. At some point

thereafter, Ms. Espy's authorized cable converter was taken into evidence by Kansas City Cable Partners. "At the time of the within motion, [Kansas City Cable Partners'] authorized cable converter, which displays evidence of having been hit by the Silver Bullet, is maintained in Kansas City Cable Partners custody." Mr. McGinnis explains that because of the configuration of the system, "the Silver Bullet can effect only converter boxes which have been altered or receive unauthorized programming."

### The Applicable Statutory Sections

Based on the evidence set forth above, Kansas City Cable Partners seeks to recover under two separate statutory sections: 47 U.S.C. § 553 and 47 U.S.C. § 605. Section 605(a) provides in pertinent part:

No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Section 553(a)(1) provides:

No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

### *47 U.S.C. § 553*

■ The statements deemed admitted clearly entitle Kansas City Cable Partners to summary judgment on its § 553(a) claim.[3] Ms. Espy is deemed to have admitted that she was "a subscriber to [Kansas City Cable Partners'] television service

---

**3.** The court notes that it did not consider the facts set forth in the verified complaint or the affidavits to decide whether this section was violated.

during the year 2000 and thereafter." She "installed a Cable Converter Box and/or device not supplied by [Kansas City Cable Partners] upon cable service lines which carried programming supplied by [Kansas City Cable Partners.]" Using this device, she "accessed premium cable services, pay-per-view events and other proprietary signals of [Kansas City Cable Partners] without paying" for them. The plain language of § 553 indicates that it is designed to prevent this exact conduct. The legislative history confirms that the section "is primarily aimed at preventing the manufacture and distribution of so-called 'black boxes' and other unauthorized converters which permit reception of cable service without paying for the service." H.R.Rep. No. 934, at 84–84, *reprinted in* 1984 U.S.C.C.A.N. 4720–21. Accordingly, Kansas City Cable Partners is entitled to summary judgment on this claim.

### *47 U.S.C. § 605*

■ Whether Ms. Espy's actions violated § 605 is a more difficult issue. Section 605 prohibits the unauthorized interception of radio communications. 47 U.S.C. § 605. The Tenth Circuit has never addressed whether § 605 applies to the sale and use of cable decoding equipment, and the circuits are split on the issue. *Compare TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196 (3d Cir.2001) and *United States v. Norris*, 88 F.3d 462 (7th Cir.1996) *with International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir.1996).

In *Sykes*, the Second Circuit held that distributors of unauthorized cable descramblers were liable under both § 553 and § 605 because the descramblers were ultimately used to intercept radio communication, even though the radio communication was transmitted by cable at the point of interception. 75 F.3d at 123–24.

The Third Circuit declined to follow *Sykes* in *TKR Cable*. Instead, the Third Circuit held that a plain reading of § 553 and § 605 indicates that the two sections are mutually exclusive. *TKR Cable*, 267 F.3d at 207. It reasoned that "[o]nce a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605." *Id.* The Seventh Circuit reached the same conclusion in *Norris*. 88 F.3d at 468. It reasoned that "[i]f Congress had intended § 605 to govern the interception of cable television programming offered over a cable network, it would have had no reason to enact § 553." *Id.* Thus, it concluded that "the only plausible, consistent interpretation of [the first] three sentences [of § 605] together is that Congress intended for § 605 to apply to the unlawful interception of cable programming transmitted through the air, while it intended for § 553(a) to apply to the unlawful interception of cable programming while it is actually being transmitted over a cable system." *Id.* at 469.

While all three circuit opinions discuss the legislative history of both statutory sections and identify language within the legislative history that supports their respective position, this court believes that the Tenth Circuit would follow the Third and Seventh Circuits. This court finds the reasoning in *TKR Cable* and *Norris* to be more persuasive and consistent with what Congress intended. In short, this court agrees that "interpreting § 605 to encompass interception of programs from a cable network would render § 553 superfluous, a result contrary to the canons of statutory construction." *Kingvision Pay–Per–View, Ltd. v. Rocca*, 181 F.Supp.2d 29, 33 (D.N.H.2002) (citing *Norris*, 88 F.3d at 468; *TCI Cablevision of New England v. Pier House Inn, Inc.*, 930 F.Supp. 727, 737 (D.R.I.1996)). Instead, it is logical to conclude that § 605 applies to radio signals, in this case satellite programming, transmitted through the air, and § 553 applies to

radio communications transmitted via a wire or cable system. *Norris,* 88 F.3d at 466.

Because Kansas City Cable Partners alleges that Ms. Espy intercepted a cable transmission, the court must deny its motion for summary judgment under § 605.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Kansas City Cable Partners' motion for summary judgment regarding liability is granted in part and denied in part. The court grants its motion regarding liability under 47 U.S.C. § 553 and denies its motion under 47 U.S.C. § 605. The court will hold a hearing permitting the parties to put on evidence regarding damages on April 14, 2003.